FILED
2008 Sep-22  PM 03:07
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
JASPER DIVISION

| | |
|---|---|
| KELLIE M. CHANEY, | ] |
| | ] |
| Plaintiff, | ] |
| | ] |
| vs. | ]   6:07-CV-01488-LSC |
| | ] |
| MICHAEL J. ASTRUE, | ] |
| Commissioner, | ] |
| Social Security Administration, | ] |
| | ] |
| Defendant. | ] |

MEMORANDUM OF OPINION

I.  Introduction.

The plaintiff, Kellie M. Chaney, appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB").  Ms. Chaney timely pursued and exhausted her administrative remedies and the decision of the Commissioner is ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

Ms. Chaney was twenty-eight years old at the time of the Administrative Law Judge's ("ALJ's") decision, and she has an Associate's Degree as a

Licensed Practical Nurse.  (Tr. at 438, 443.)  Her past work experiences include employment as a licensed practical nurse, a teacher's aide, a cook, and a user support analyst.  (*Id*. at 433.)  Ms. Chaney claims that she became disabled on October 28, 2002, due to systemic lupus erythematosus ("SLE") and bipolar disorder.  (*Id*. At 432, 434.)

When evaluating the disability of individuals over the age of eighteen, the regulations prescribe a five-step sequential evaluation process.  *See* 20 C.F.R. §§ 404.1520, 416.920; *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001).  The first step requires a determination of whether the claimant is "doing substantial gainful activity." 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).  If he or she is, the claimant is not disabled and the evaluation stops.  (*Id*.)  If he or she is not, the Commissioner next considers the effect of all of the physical and mental impairments combined.  20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  These impairments must be severe and must meet the durational requirements before a claimant will be found to be disabled.  (*Id*.)  The decision depends on the medical evidence in the record.  *See Hart v. Finch*, 440 F.2d 1340, 1341 (5th Cir. 1971).  If the claimant's impairments are not severe, the analysis stops.  20 C.F.R. §§

404.1520(a)(4)(ii), 416.920(a)(4)(ii). Otherwise, the analysis continues to step three, which is a determination of whether the claimant's impairments meet or equal the severity of an impairment listed in 20 C.F.R. pt. 404, subpt. P, Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the claimant's impairments fall within this category, he or she will be found disabled without further consideration. (*Id.*) If they do not, a determination on the claimant's residual functional capacity ("RFC") will be made and the analysis proceeds to the fourth step. 20 C.F.R. § 404.1520(e), 416.920(e).

The fourth step requires a determination of whether the claimant's impairments prevent him or her from returning to past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant can still do his or her past relevant work, the claimant is not disabled and the evaluation stops. (*Id.*) If the claimant cannot do past relevant work, then the analysis proceeds to the fifth step. (*Id.*) Step five requires the court to consider the claimant's RFC, as well as the claimant's age, education, and past work experience in order to determine if he or she can do other work. 20 C.F.R. §§ 404.1520(a)(4)(v) 416.920(a)(4)(v). If the claimant can do other work, the claimant is not disabled. (*Id.*)

Applying the sequential evaluation process, the ALJ found that Ms. Chaney meets the nondisability requirements for a period of disability and DIB and was insured through the date of his decision. (Tr. at 23.) He further determined that Ms. Chaney has not engaged in substantial gainful activity since the alleged onset of her disability. (*Id.*) According to the ALJ, in combination Plaintiff's SLE and bipolar disorder are considered "severe" based on the requirements set forth in the regulations. (*Id.*) However, he found that these impairments neither meet nor medically equal, either singly or in combination, any of the listed impairments in Appendix 1, Subpart P, Regulations No. 4. (*Id.*) The ALJ did not find Ms. Chaney's allegations to be totally credible, and he determined that she has the following residual functional capacity: she can perform light or less exertional work with a sit-stand option; she cannot engage in any significant postural activities, such as crouching, crawling, squatting, or climbing; and she is restricted from using foot controls. (*Id.*)

According to the ALJ, Ms. Chaney is able to perform past relevant work as a user/support analyst as her medically determinable SLE and bipolar disorder do not prevent her from performing that work. (*Id.*) The ALJ

concluded his findings by stating that Plaintiff "was not under a 'disability,' as defined in the Social Security Act, at any time through the date of this decision." (*Id.* at 24.)

II.     Standard of Review.

The Court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of its review is limited to determining (1) whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and (2) whether the correct legal standards were applied. *See Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). The Court approaches the factual findings of the Commissioner with deference, but applies close scrutiny to the legal conclusions. *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). The Court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner. *Id.* "The substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" *Parker v. Bowen*, 793

F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)). Indeed, even if this Court finds that the evidence preponderates against the Commissioner's decision, the Court must affirm if the decision is supported by substantial evidence. *Miles*, 84 F.3d at 1400. No decision is automatic, however, for "despite this deferential standard [for review of claims] it is imperative that the Court scrutinize the record in its entirety to determine the reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987). Moreover, failure to apply the correct legal standards is grounds for reversal. *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

III. Discussion.

Ms. Chaney alleges that the ALJ's decision should be reversed and remanded for failure to give proper weight to the opinions of two therapists. She believes that the ALJ failed to properly consider the opinion of her treating therapist, Dr. Woodfin Gregg, and a consultative examiner, Dr. Pamela Jo Pierce-Whitehead in deciding that Ms. Chaney was capable of returning to her past relevant work. (Doc. 6 at 11-12.)

    A. Treating Physician's Diagnoses.

Plaintiff contends that the ALJ improperly evaluated her treating physician's opinion. (*Id.*) A treating physician's testimony is entitled to "substantial or considerable weight unless 'good cause' is shown to the contrary." *Crawford v. Commissioner of Social Security*, 363 F.3d 1155, 1159 (11th Cir. 2004) (quoting *Lewis v. Callahan,* 125 F.3d 1436, 1440 (11th Cir. 1997)) (internal quotations omitted). The weight to be afforded a medical opinion regarding the nature and severity of a claimant's impairments depends, among other things, upon the examining and treating relationship the medical source had with the claimant, the evidence the medical source presents to support the opinion, how consistent the opinion is with the record as a whole, and the specialty of the medical source. *See* 20 C.F.R. §§ 404.1527(d), 416.927(d). Furthermore, "good cause" exists for an ALJ not to give a treating physician's opinion substantial weight when the: "(1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips v. Barnhart*, 357 F.3d 1232, 1241 (11th Cir. 2004) (*citing Lewis*, 125 F.3d at 1440); *see also Edwards v. Sullivan*, 937 F.2d 580, 583-84 (11th Cir. 1991) (holding that "good

cause" existed where the opinion was contradicted by other notations in the physician's own record). Finally, events that occurred after an examination can be used to cast doubt on the validity of that opinion. *See Crawford*, 363 F.3d at 1160 (citing events two weeks and five weeks after the relevant examination).

The Court must also be aware of the fact that opinions such as whether a claimant is disabled, the claimant's residual functional capacity, and the application of vocational factors "are not medical opinions, . . . but are, instead, opinions on issues reserved for the Commissioner because they are administrative findings that are dispositive of a case; i.e., that would direct the determination or decision of disability." 20 C.F.R. §§ 404.1527(e), 416.927(d). The Court is interested in the doctors' evaluations of the claimant's "condition and the medical consequences thereof, not their opinions of the legal consequences of his [or her] condition." *Lewis*, 125 F.3d at 1440. Such statements by a physician are relevant to the ALJ's findings, but they are not determinative, as it is the ALJ who bears the responsibility for assessing a claimant's residual functional capacity. *See, e.g.*, 20 C.F.R. § 404.1546(c).

Dr. Gregg, Plaintiff's treating physician, saw Plaintiff from May 19, 2003, for treatment of her bipolar disorder. (Tr. at 381.) In January 2004, Dr. Gregg completed a Supplemental Questionnaire as to Residual Functional Capacity on Ms. Chaney. He noted a marked level of impairment in several areas, including: (1) concentration, persistence, or pace resulting in frequent failure to complete tasks in a timely manner in a work setting or elsewhere; (2) ability to respond to customary work pressures; (3) ability to understand, carry out, and remember instructions in a work setting; (4) ability to respond appropriately to supervision in a work setting; and (5) ability to perform repetitive tasks in a work setting. (*Id.* at 367-68.) He also indicated moderate impairment of activities in daily living, ability to maintain social functioning, ability to respond to co-workers, and ability to perform simple tasks in a work setting. (*Id.*)

Plaintiff contends that the ALJ acted improperly by failing to show "good cause" for rejecting the treating physician's January 2004 opinion regarding Ms. Chaney's impairments. She states that the ALJ incorrectly rejected the treating physician's January 2004 opinion solely because of "her ability to perform her basic grooming activities." (Doc. 8 at 11.) This

criticism is belied by the record. In his opinion, the ALJ recounts a long history of treatment by the treating physician, including indications of "marked or moderate impairments in all areas" in his January 2004 evaluation. (Tr. at 19.) While the ALJ was conscious of these statements, he nevertheless found the treating physician's January 2004 evaluation to be less than credible, establishing several reasons for giving that opinion little weight. (Tr. at 22.)

First, the ALJ noted that the treating physician's opinion was inconsistent with his own treatment notes. (*Id*.) In October 2003, Dr. Gregg noted an "overall improvement in mood cycles in response to medication," as well as Ms. Chaney's increasing ability to control her anger. (*Id*. at 372.) In November 2003, Dr. Gregg noted that Ms. Chaney's angry outbursts were "much less than before." (*Id*. at 369.) Moreover, the ALJ determined that Ms. Chaney's increased improvement following Dr. Gregg's January 2004 evaluation further undermined the credibility of that opinion. (*Id*. at 22.) In May 2004, Dr. Gregg noted a substantial improvement in Ms. Chaney's condition, recording that Ms. Chaney referred to her present condition as a "breakthrough." (*Id*. at 405.) Contrary to his January 2004 opinion that she

would be severely limited in the work place, Dr. Gregg reported in September 2004 that Ms. Chaney was making all A's in her college courses, despite the ongoing stress of a custody battle. (*Id.* at 399.) From March of 2004 to March of 2005, Dr. Gregg consistently described Ms. Chaney's progress as "fair" or "fair-good." (*Id.* at 396-400, 403, 404-05.) Finally, the ALJ noted that even Dr. Gregg indicated that his January 2004 opinion was not based on a psychological examination. (*Id.* at 22, 368.)

The ALJ appropriately rejected the January 2004 opinion since it is inconsistent with both the previous and subsequent reports of Dr. Gregg. Dr. Gregg's January opinion is simply unsupported by the rest of the evidence in the record and appears to be anomalous.

For these reasons, the Court is of the opinion that the ALJ had good cause to disregard Dr. Gregg's January 2004 assessment of Plaintiff's condition. *See Crawford*, 363 F.3d at 1159-60; *Phillips*, 357 F.3d at 1240-41.

B.   Consultative Examiner's Opinion.

Plaintiff contends that the ALJ improperly evaluated her consultative examiner's opinion. A consultative examiner's opinion is subject to the same tests as a treating physician; if the opinion is inconsistent with the record or

the physician's notes, the ALJ may give it less weight. *See Crawford,* 363 F.3d at 1160 (evaluating consultative examiner's opinion in light of contemporaneous examination by another doctor). Furthermore, because a consultative examiner sees a patient on one occasion rather than on an on-going basis, the opinions derived from such an examination are "not entitled to great weight." *Id.*

Plaintiff contends that the ALJ acted improperly by failing to appropriately consider the consultative examiner's October 2003 opinion. She states that the ALJ "conveniently ignores" statements by the consultative examiner, Dr. Pamela Jo Pierce-Whitehead, indicating that Ms. Chaney would have great difficulty dealing with the stress and interpersonal relationships attendant with a working environment. (Doc. 6 at 11-12.) The record, on the other hand, indicates that the ALJ evaluated Dr. Pierce-Whitehead's opinion and found it inconsistent with the doctor's own findings, contemporaneous examinations by other physicians, and subsequent events.

In her findings, Dr. Pierce-Whitehead determined that Ms. Chaney would have "great difficulty with concentration and would be unable to tolerate the normal stress and vocational pressure" of a work environment. (Tr. at 339.)

The ALJ, however, determined that her examination notes are inconsistent with this conclusion.  (*Id.* at 22.)  Dr. Pierce-Whitehead indicated that Ms. Chaney exhibited "no evidence of confusion, loosening associations or tangentiality." (*Id.* at 339.)  Dr. Pierce-Whitehead found Ms. Chaney's mental control to be adequate, noted that she was able to follow directions and preform written commands, and that her social judgment was at appropriate levels.  (*Id.*)

The ALJ also determined that contemporaneous treatment by other physicians further undermines Dr. Pierce-Whitehead's conclusions.  (*Id.* at 22.) Dr. Woodfin also treated Ms. Chaney in October 2003.  His evaluation indicated an "overall improvement in mood cycles in response to medication." (*Id.* at 372.)  Moreover, in an opinion completed on November 13, 2003, Psychologist Kenneth Warren found that Ms. Chaney was not significantly limited in her ability to maintain regular attendance at work, make work-related decisions, and maintain relationships with co-workers.  (*Id.* at 355-56.) Dr. Warren indicated only moderate limitations in areas such as "ability to complete a workday and workweek" and ability to "work in coordination with others."  (*Id.*)

Finally, the ALJ determined that events following the examination cast doubt on the reliability of Dr. Pierce-Whitehead's conclusions. (*Id.* at 22.) The doctor's determination that Ms. Chaney would not be able to handle the stress of a working environment is undermined by Ms. Chaney's subsequent success in school while involved in a custody dispute. (*Id.* at 399-400.)

For these reasons, the Court is of the opinion that the ALJ had good cause to disregard Dr. Pierce-Whitehead's October 2003 assessment of Plaintiff's condition. *See Crawford*, 363 F.3d at 1159-60; *Phillips*, 357 F.3d at 1240-41.

IV.   Conclusion.

Upon review of the administrative record, and considering all of Ms. Chaney's arguments, the Court finds the Commissioner's decision is supported by substantial evidence and in accord with the applicable law. A separate order will be entered.

Done this 17th day of September 2008.

L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE
153671